UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KHALID CALDWELL SAT,

Plaintiff,

v.

DIAMOND D. CLAY,

Defendant.

Case No. 3:24-cv-00985-AR

**ORDER/FINDINGS AND RECOMMENDATION**

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Khalid Sat brought this personal injury suit against defendant Diamond Clay in June 2024. Sat never properly served Clay and Clay moved in November 2025 for a judgment on the pleadings dismissing Sat's complaint as untimely under the applicable statute of limitations. Sat never responded to Clay's motion. After the court issued an Order to Show Cause in March 2026, Sat requested another 30 days to obtain certain discovery records and file a response. Sat asserts that good cause exists for the extension because the requested records are relevant and material to his intended response. For the reasons explained below, the court disagrees and

DENIES Sat's motion for an extension. Clay, on the other hand, carries her burden and her motion should be GRANTED and Sat's complaint dismissed with prejudice.

**BACKGROUND**

The following facts are taken from Sat's complaint and the attached police reports and insurance claim documents, which the court incorporates by reference.[1] On June 22, 2022, Sat was driving his wife's car while working as a delivery driver in Portland. (First Am. Compl. (FAC), ECF 6 at 4.) That evening, at around 10pm, Sat and Clay were involved in a motor vehicle collision in the downtown area. (*Id.*; 911 Dispatch Log, ECF 6 at 13-14.) Sat alleges that he observed Clay driving recklessly before she "unintentionally" sideswiped his vehicle. (FAC, ECF 6 at 4.) Whether Clay initially fled the scene is not clear, but at some point following the collision, the pair pulled over and Clay's passenger, Dimitri Victor, got out of the car and threatened to fight Sat. Sat returned to his car to call 911, and Clay and Victor fled in Clay's vehicle. Sat followed, and when Clay pulled over again, Victor smashed Sat's windshield and driver's side window with a tool of some kind. (*Id.*) According to the police reports, at least one passerby witnessed Victor hitting Sat's car. (911 Dispatch Log, ECF 6 at 16.)

---

[1] "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A document is subject to incorporation-by-reference if the "plaintiff refers extensively to the document" or it "forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Whether a document "forms the basis" of a complaint turns on whether the complaint "necessarily relies" on that document. *Ecological Rights Found. v. Pac. Gas and Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013). "A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the [] motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, all three elements are satisfied.

Clay and Victor fled again towards North Portland, and again Sat followed. Sat called 911 again and despite the dispatch operator advising him not to follow Clay, he did not heed that advice. Sat informed the operator that he was bleeding. (911 Dispatch Log, ECF 6 at 12-17.) Clay also called 911 and reported that a road rager was following her. She stated that she was not afraid of him and eventually pulled over again into a gas station. (*Id.* at 18.) The police arrived at the scene shortly after and took Sat, Clay, and Victor's statements. (Police Report, ECF 6 at 9-10.) Sat and Clay stated that the other caused the initial collision. Clay admitted to the police that she punched Sat's car, but Victor denied causing any damage. The officers observed the damage to Sat's window and windshield and noted that Sat's forearm was bleeding. Sat told them that it was due to shattered glass from his driver's side window but refused medical treatment. Sat and Clay exchanged insurance information, and Sat stated that he would like to press charges against Victor. The officers then provided Sat with a victim complaint form, as well as their business card and a case number. (*Id.*) No arrests were made, but the police forwarded their report to the district attorney's office with recommended charges of assault and vandalism against Clay and Victor. (*Id.* at 7-8.)

In May 2023, Sat's wife, Kimberley Caldwell, hired an attorney and submitted a written demand for $6,952.74 to Clay's insurance company for damage to her car from the initial sideswipe collision. (FAC, ECF 6 at 6.) Clay admits that that claim was settled, and it appears that amount was paid in full. (Answer, ECF 11 ¶ 1.) Caldwell's claim excluded any damage to the windshield or driver's side window. (Insurance Demand Letter, ECF 6 at 29.)

Sat brought a personal injury action against Clay in June 2024 (ECF 1) and moved to proceed *in forma pauperis* (IFP) (ECF 2). But Sat's complaint lacked sufficient factual detail,

and the court was unable to determine whether it had subject matter jurisdiction or whether Sat was plausibly entitled to relief. The court thus ordered Sat to amend (ECF 5), and Sat timely filed his first amended complaint on August 16, 2024. (ECF 6.) In his FAC, Sat alleges that the court has diversity jurisdiction because he is a citizen of Oregon and Clay is a citizen of Louisiana. (*Id.* at 3.) Since the incident with Clay, Sat's Post Traumatic Stress Disorder has prevented him from working for two years, which has caused financial hardship for himself and his family. He seeks damages for his lost income and pain and suffering totaling $900,000. (*Id.* at 4-5.)

After Sat filed his FAC, the court granted his IFP motion and ordered service. (ECF 7.) The U.S. Marshals Service made three attempts to serve Clay but was unsuccessful and returned the process receipt as unexecuted on October 25, 2024. (ECF 9.) Noting that service could not be completed at the address provided, the court under Federal Rule of Civil Procedure 4(m) ordered Sat to submit a new summons with an alternative address or otherwise provide proof of service of process within 90 days. (ECF 10.) Sat never submitted a new summons, however, and the 90-day deadline lapsed without any proof of service of process.

Although she was never served, Clay appeared and filed an answer in February 2025 in which she denied most of Sat's allegations and raised several affirmative defenses, including failure to serve within the applicable statute of limitations. (Answer, ECF 11.) At the Rule 16 conference in March, the court adopted the parties' proposed discovery deadlines and ordered fact discovery to be completed by August 25, 2025. Clay's counsel indicated during the conference that she intended to seek dismissal for lack of service. Sat represented that the address he provided on the original summons was the only one available to him. Noting that

Clay had appeared and thus had actual notice of the lawsuit, the court informed Sat that under those circumstances, he would "likely be able to show good cause to extend the time for service" and that Oregon law permitted him to serve Clay at her attorney's address. (R. 16 Minutes, ECF 13.) The court addressed Clay as well and reminded her of her duty, as an individual subject to service under Federal Rule of Civil Procedure 4(e), to avoid unnecessary expense of serving the summons. The court then provided Clay with the waiver form. Despite that guidance, Clay did not waive service, and Sat never moved to extend the time for service, filed an alternative summons, or otherwise provided proof of any attempt to serve Clay. To this day, Clay remains unserved.

On November 17, 2025, under the parties' joint briefing schedule, Clay moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that Sat's claim was untimely because he did not complete service within the statute of limitations. (Mot. J. Pleadings, ECF 14.) Sat neither responded to that motion nor requested more time to respond. Three months later, on March 17, 2026, the court ordered Sat to respond to the pending motion for judgment on the pleadings or to show good cause for his failure to do so. The court warned Sat that failure to comply could result in dismissal. (Order Show Cause (OSC), ECF 17.)

Sat responded to the court's Order to Show Cause, although he did not respond to Clay's motion. Sat maintained that his failure to timely respond was not willful but a result of his participation in the related criminal case which, as a victim, required "substantial time, emotional energy, and attention." (Pl.'s Resp. OSC, ECF 18 ¶¶ 2-3.) Sat also asserted that Clay's actions caused Sat to experience "severe mental and emotional distress" and impaired his ability to "function, understand legal procedures, and comply with Court deadlines, including properly

completing service of process." (*Id.* ¶¶ 3-4.) Sat represented that he was "now in a more stable condition" and was "prepared to move forward diligently and in full compliance with all Court rules and deadlines." (*Id.* ¶ 7.)

In response to the Order to Show Cause, Sat requested an extension of the time for service. (*Id.* at 3.) The court rejected that request because, in the intervening year between the Rule 16 conference at which Sat learned that service was deficient and the court's Order to Show Cause, Sat had made no attempts to complete proper service. In the court's view, the time for such a request had come and gone and Sat failed to establish good cause for an extension. Instead, the court gave Sat two more weeks to respond to Clay's motion for judgment on the pleadings. (ECF 19.) Still, Sat failed to respond and requested more time. (Mot. Extension Time, ECF 20.) He did not confer with Clay before making that motion, despite this district's Local Rules requiring conferral. *See* LR 7-1(a). In his motion, Sat claimed that he needed more time to obtain "records by subpoena that are relevant and material." (Mot. Extension Time, ECF 20 at 1.) Unable to determine whether good cause existed to grant his extension due to Sat's lack of specificity, the court ordered Sat to clarify which records he sought and why they were relevant to responding to Clay's motion for judgment on the pleadings. (ECF 21.)

In his supplemental motion, Sat asserts that he has subpoenaed or is subpoenaing the Multnomah County mental health crisis line, the Multnomah County court, and the district attorney's office, but production has been delayed by sources outside Sat's control. Those records are relevant, in Sat's view, because they "provide objective documentation" of his mental health condition at the time of the events alleged in his FAC and "support and clarify the factual allegations already asserted." (Pl.'s Suppl. Mot., ECF 22 at 2.) Without them, Sat believes he

"cannot fully and fairly present the factual basis of the claims or determine whether amendment is required to meet the legal standards challenged by Defendant" in her motion for judgment on the pleadings. (*Id.*)

Pending before the court are Clay's motion for judgment on the pleadings (ECF 14) and Sat's motion for an extension of time to respond (ECF 20).

**DISCUSSION—SAT'S MOTION FOR AN EXTENSION**

Although Sat does not move under a particular rule, the court construes his motion (and supplemental motion) as a request for an extension under Federal Rule of Civil Procedure 6(b). That rule provides that, if a request to extend is made before the original deadline or its extension expires, the court may grant an extension for good cause shown. FED. R. CIV. P. 6(b)(1)(A). Parties that miss deadlines and request an extension only after the fact, however, must show that their failure to act was due to excusable neglect. FED. R. CIV. P. 6(b)(1)(B).

Clay filed her motion in November 2025, and this is Sat's first request for an extension to respond, making review for excusable neglect appropriate here. On the other hand, Sat's request could be treated as timely because the court most recently ordered him to respond by April 28, 2026, and he requested an extension on April 27, 2026. Because Sat is self-represented, the court exercises its discretion to review his motion for good cause. *See Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (noting that pro se filings are to be construed liberally).

That said, even under the "less rigorous" standard of good cause, Sat fails to carry his burden. *See Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 887 (9th Cir. 2001) (noting that good cause is a less demanding standard than excusable neglect). District courts enjoy broad discretion to grant or deny extension requests, limited only by an "overriding obligation to

construe and administer the procedural rules so as 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010) (citing FED. R. CIV. P. 1). In line with that obligation, courts interpret Rule 6(b) liberally and generally favor granting extensions to ensure that cases are resolved on substantive, rather than procedural, grounds. *Id.* at 1258-59. As a result, the "good cause" standard imposes only a modest burden. Unless there is evidence of bad faith, a request made under Rule 6(b)(1)(A) that is reasonable, justified, and non-prejudicial will typically be granted. *Id.* at 1260.

Here, despite that low bar, Sat has not shown that good cause exists for an extension. For one, his request is not reasonable. Clay moved for judgment on the pleadings on November 17, 2025. (ECF 14.) Sat's response was due 14 days later, on December 1, 2025. *See* LR 7-1(e). Over three months after Sat's response was due, the court ordered him on March 17, 2026, to respond by April 7, 2026, or show good cause for his failure to do so. (ECF 17.) Sat explained that his mental health prevented him from submitted a timely response and represented that he was "more stable" now and prepared to proceed. (Pl.'s Resp. OSC, ECF 18 ¶ 7.) He did not mention any missing discovery, nor did he file a response to Clay's motion. The court then granted him another two weeks to respond. (ECF 19.)

Now, Sat requests another 30 days to respond. (ECF 20.) That request may have been reasonable back in November, but it is not reasonable now. The court cannot find good cause to grant Sat's motion where his response is, at this point, several months late, and the court has already granted two extensions. *See, e.g.*, *Am. GNC Corp. v. GoPro, Inc.*, 18-CV-00968-BAS-BLM, 2018 WL 6262931, at *2 n.2 (S.D. Cal. July 18, 2018) (declining to find good cause to

extend where defendant had already received a 45-day extension); *Latu v. Holmes*, 2:20-CV-1518-WBS-DMC-P, 2025 WL 2373426, at *1 (E.D. Cal. Aug. 14, 2025) (where two previous extensions had already been granted, declining to grant third motion for an extension to respond to motion for summary judgment).

Sat's request is also not justified. Sat asserts that he has issued or is issuing subpoenas for mental health crisis line records and court and district attorney records. (Pl.'s Suppl. Mot., ECF 22 at 2.) Contrary to Sat's contention, those records are not relevant or material to his ability to respond to Clay's motion for judgment on the pleadings. Clay's motion is premised on Sat's failure to obtain service of process within the applicable statute of limitations. (*See generally*, Mot. J. Pleadings, ECF 14.) Sat asserts that the subpoenaed records will "support and clarify the factual allegations" in his complaint but makes no argument as to how those records relate to lack of service or the statute of limitations. (Pl.'s Suppl. Mot., ECF 22 at 2.) It is the court's view that those records go to the merits of Sat's claim, rather than the procedural ground for dismissal presented by Clay. Sat has not sufficiently articulated how the requested records bear on the court's determination of Clay's motion. *See Irving v. County of Sacramento*, 231 F. App'x 584, 585-86 (9th Cir. 2007) (affirming denial of motion for an extension where movant did not demonstrate that the requested discovery would change the outcome of the summary judgment proceeding).

Sat adds that the requested records will help him decide whether he should allege in an amended complaint additional facts that would "directly address" Clay's arguments. (Pl.'s Suppl. Mot., ECF 22 at 2.) That reasoning also fails to warrant an extension, for two reasons. The court has already explained how the requested records are irrelevant to Clay's motion. And even

assuming Clay's motion attacked the sufficiency of Sat's allegations, which it doesn't, Sat is not entitled to discovery to develop his pleading. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Sat's reasons for the requested extension do not support a good cause finding.

Finally, Clay, who has never been properly served, will be prejudiced if the court grants Sat's request for an extension. At the time Sat moved for an extension, this suit had been pending for nearly two years, and Clay's motion for over four months. Permitting Sat to delay resolution any further would be prejudicial to Clay under the circumstances. *Rodriguez v. St. Luke's Hosp.*, 1:24-CV-00159-DCN, 2025 WL 1332074, at *5 (D. Idaho May 7, 2025) (where defendants had never been served and case had been pending for a year, permitting plaintiff to file an untimely response to motion to dismiss would be prejudicial).

Not only that, but what Sat is proposing in his motion for an extension is conducting discovery well after the discovery deadline has passed. Sat sued Clay in June 2024, and fact discovery closed in August 2025. Sat had over a year to acquire the records he seeks. There is no evidence that he acted diligently in obtaining them during that time, despite his assertion otherwise. Indeed, Sat states in his motion that, for some of the records, he is only "in the process of issuing subpoenas." (Pl.'s Suppl. Mot., ECF 22 at 1.) And Sat did not mention his need for the records at all in response to the court's Order to Show Cause.

Sat's apparent need for discovery does not outweigh the prejudice to Clay if the court were to grant the extension. Indeed, even if Sat did obtain the requested records, permitting him to file a response now would ultimately be futile. It is undisputed that Sat failed to serve Clay—

another 30 days to seek irrelevant records cannot cure that deficiency. *See Kriley v. Browne*, 2:21-CV-01176-JHC, 2025 WL 974805, *2 (W.D. Wash. Apr. 1, 2025), *aff'd sub nom*. *Kriley v. Browne, et al.*, 2026 WL 2241780 (9th Cir. Aug. 4, 2026) (denying motion for an extension where extension would not cure plaintiff's failure to disclose an essential expert witness). In other words, it is Sat's failure to serve Clay that forecloses a decision on the merits, rather than the court's denial of his motion for an extension.

Between his failure to serve Clay, failure to respond to her motion, and apparent failure to conduct timely discovery, Sat's lack of diligence has frustrated Clay's, and the court's, ability to reach a resolution. Sat does not demonstrate good cause, and his motion for an extension is therefore denied.[2]

/ / / / /

/ / / / /

/ / / / /

---

[2] Sat's motion for an extension is not a dispositive matter and is appropriate for disposition by order. Magistrate judges have the authority to "hear and determine" nondispositive matters. 28 U.S.C. § 636(b)(1)(A); *see also SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). Section 636 expressly enumerates eight motions that are dispositive and fall outside the ambit of a magistrate judge's authority. 28 U.S.C. § 636(b)(1)(A). Because the rule does not include Rule 6 motions, the court must look to the effect of the issued ruling to determine whether plaintiffs' motion is dispositive or not dispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015); *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004) ("[W]e must look to the effect of the motion, in order to determine whether it is properly characterized as dispositive or non-dispositive[.]"). As a result of the court's denial of Sat's motion, Clay's motion is unopposed. But this district does not have a local rule requiring the court to grant unopposed motions, and the court still considers Clay's motion on its merits to determine whether she has carried her burden. The court's order on Sat's motion is therefore reviewed for clear error. FED. R. CIV. P. 72(a) (for nondispositive matters, district judge "may modify or set aside any part of the order that is clearly erroneous or is contrary to law").

**DISCUSSION-CLAY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**A. *Legal Standard***

Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings if the pleadings are closed and it is early enough to not delay trial. FED. R. CIV. P. 12(c). In resolving such a motion, the court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Power of Fives, LLC v. B&R Enter.'s, Inc.*, 23-15152, 2023 WL 8613494, at *1 (9th Cir. Dec. 12, 2023) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). Judgment on the pleadings is proper where "there is no material fact in dispute and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

**B. *Analysis***

Clay moves unopposed for a judgment dismissing Sat's complaint. She argues that Sat failed to complete service within the statute of limitations imposed by Oregon law and his claim is therefore time-barred. (*See generally*, Mot. J. Pleadings, ECF 14.) The court agrees with Clay and recommends dismissal of this action.

Federal courts sitting in diversity apply federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). In a federal diversity action brought under state law, "the state statute of limitations controls." *Bancorp Leasing and Fin'l Corp. v. Augusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir. 1987) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–53 (1980)). "Statutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts." *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153,157 (9th Cir. 1992) (citation

modified). It follows that state law, including any related service requirement, governs when an action is deemed "commenced" for the purpose of calculating the statute of limitations. *Walker*, 446 U.S. at 752-53; *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) (Federal Rule of Civil Procedure 3, which provides that an action is commenced on the date a complaint is filed, "does not commence a suit based on state law for purposes of the statute of limitations.").

Personal injury actions in Oregon must be "commenced" within two years. ORS § 12.110(1). Under Oregon law, if a plaintiff serves the defendant within 60 days of filing their complaint, the action is considered commenced on the day the complaint was filed for statute of limitations purposes. ORS § 12.020(2). Yet if a plaintiff does not serve the defendant within 60 days of filing their complaint, the action is "deemed commenced . . . when the complaint is filed, and the summons served on the defendant." ORS § 12.020(1).

Here, the underlying injury occurred on June 22, 2022. (FAC, ECF 6 at 4.) Sat filed his initial complaint on June 21, 2024, one day before the statute of limitations expired. (ECF 1.) Clay contends that Sat had until August 20, 2024, to complete service and bring a timely claim. (Mot. J. Pleadings, ECF 14 at 4.) Viewing the facts in the lights most favorable to Sat, the court notes that service was delayed until Sat amended his complaint on August 16, 2024, in accordance with the court's order. If Sat's amended complaint starts the clock, he had until October 15, 2024, to serve Clay. The court, however, need not determine whether the statute of limitations runs from June 21 or August 16, because Sat never completed service. Despite the court's guidance on the proper procedure for effectuating service (*See* R. 16 Minutes, ECF 13), Clay remains unserved to this day. Sat makes no representations otherwise in his recent filings.

Because Sat did not timely commence his action within two years, his complaint should be dismissed.

## CONCLUSION

For the above reasons, Sat's Motion for Extension of Time (ECF 20) is DENIED. Clay's Motion for Judgment on the Pleadings (ECF 14) should be GRANTED, and Sat's personal injury claim should be dismissed with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: August 18, 2026

JEFF ARMISTEAD
United States Magistrate Judge